# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

MICHAEL COOPER                                                   PLAINTIFF

v.                                                     CIVIL ACTION NO. 5:17-CV-P30-GNS

TROY BELT et al.                                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff, Michael Cooper, proceeding *pro se* and *in forma pauperis*, initiated this 42 U.S.C. § 1983 action by filing a complaint. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, the complaint will be dismissed in part and allowed to continue in part.

## I. SUMMARY OF CLAIMS

Plaintiff is a convicted inmate incarcerated at the Kentucky State Penitentiary (KSP). He names as Defendants the following employees of KSP: Unit Administrator Troy Belt; Lt. Terry Peede; Lt. James Beeler; and correctional officers Neil Gardner and J. Pillion. He also sues the Kentucky Department of Corrections (KDOC) Commissioner Rodney Ballard and the following "CCS" employees:[1] David Watson, Jorge Dominicis, and Gerard Boyle. All Defendants are sued in their individual and official capacities.

Plaintiff alleges that the "CCS" Defendants violated his Fourth Amendment right by violating "H.I.P.P.A." (the Health Insurance Portability and Accountability Act) in giving out health information without a court order. He also alleges that the KDOC has allowed KSP staff to continue to violate inmates' constitutional rights.

---

[1] The Court assumes "CCS" to refer to an entity which contracts with KSP to provide health services to inmates.

Plaintiff next alleges that on February 19, 2017, he was stopped by Defendant Pillion who asked what Plaintiff had in his mouth. According to the complaint, Plaintiff responded, "'[Y]ou know their isn't anything in my mouth. The only reason you stopped is so you can harass me.'" Defendant Pillion then placed Plaintiff in the "strip out cage." Defendant Belt came to the strip out cage and asked Plaintiff why he kept filing grievances on him and told Plaintiff that by filing lawsuits and grievances he was making enemies. Defendant Belt told Defendants Peede, Beeler, Gardner, and Pillion to take Plaintiff back to his cell. According to the complaint, Plaintiff then stated that he was going to file a grievance, to which Defendant Belt replied that he would be sure to hold Plaintiff's property for five days.

Plaintiff states that he was placed completely naked in a cell with no mattress, toilet paper, running water, or soap. He states that Defendant Peede told him he would get clothes and a blanket "'if he felt like it.'" The next day Defendants Peede and Beeler came to his cell where Defendant Beeler told Plaintiff that he would give him "'nothing back. I'm going to teach Mr. Cooper a lesson about first shift . . . We do what we want.'" (Ellipses in original.)

On February 21, 2017, Plaintiff still had not received his property back. According to his complaint, when his neighbor began flooding his cell, 14-Right-15, Defendants Peede, Beeler, Gardner, and Pillion came to Plaintiff's cell. He states that Defendant Peede maced him, told him to get on his knees, and then opened the door, pulled him to his feet and took him to the shower where "in shakles and handcuffs the nurse told me to sit down and put my head back. She then poured water over my mouth and nose trying to drownd me."

Plaintiff alleges that the cell he was then placed in, 14-Left-15, had feces in the toilet that would not flush. He further states that he still had mace in his eyes and on his body, including on his "private" and in the cuts on his wrist and ankle. He states that no medical staff was sent to

check on him during the day that he spent in that cell. Plaintiff states that after one day in 14-Left-15 he was put back into 14-Right-15. He also states that he was on property restriction from February 19 to 24. He states that when he did get his property back, all of his books, magazines, and photographs of his daughter were gone. He asserts, "All my item[s] were thrown away by c/o Gardner, Lt. Terry Peede and Lt. James Beeler. James Beeler got mad because I told him he couldn't read so how did he get this job. And for the record Lt. James Beeler can bearly read or write."

The complaint states:

> Lt. Peede kept my personal property for so long was so that I couldn't file a lawsuit or a grievance. I am also afraid that if I file a grievance the c-o's will come in here and beat me up, taze me, mace, put me in one of these cells naked, while staff walk by and ask am I thinking about dropping this lawsuit 5:15-cv-P244-TBR.[2] And since I won't break I am subjected to a punishment to server for the courts to ignore. . . . Troy Belt tells them to be [corrupt]. All I have now is two sheets to keep me warm. As a result I've gotten sick and sick call refuses to see me.

Plaintiff identifies the following claims against the KSP Defendants. Plaintiff states that Defendant Peede violated his First Amendment rights by placing him in a restricted cell because Plaintiff had filed grievances against staff and violated the Eighth Amendment by leaving Plaintiff in a "frezzing cell naked with burning mace in my eyes. No shower, no clothes, in a dirty cell with feecee's still in the toilet."

Plaintiff alleges that Defendant Beeler violated his Eighth Amendment rights by placing him in a restricted cell "for saying he couldn't read. And retaliation for filing grievances. He violated my 5if Amendment by stealing my picture, books and magazines."

---

[2] This reference appears to be to case number 5:15-CV-P249-TBR, a still-pending § 1983 action in this Court filed by Plaintiff against a number of KSP employees, including Troy Belt.

Plaintiff alleges that Defendant Belt violated the First Amendment by retaliating for the filing of grievances and the Eighth Amendment by leaving Plaintiff naked, in a cold cell "with mace all over [him] for six days."

Plaintiff asserts that Defendant Pillion violated the First Amendment by throwing away his grievance forms and violated the Fourth Amendment by throwing away his personal property. Plaintiff states that Defendant Pillion searched his cell looking for drugs "and found nothing after 6 days, then decided to give me my property back. When I got it back my property was missing."

With regard to Defendant Gardner, Plaintiff alleges that he violated the Fourth, Fifth, and Sixth Amendment by taking Plaintiff's property and then throwing away valuable items in retaliation. Plaintiff also alleges that "[a]ll of the above c/o's including Gardner having openly expressed how much they do not like people of color."

Plaintiff attaches several documents as exhibits. A disciplinary report regarding February 21, 2017, shows that Plaintiff pleaded guilty to flooding his cell. The disciplinary report for that major disciplinary infraction of "[c]reating or causing a health hazard," describes the incident as follows:

> On February 21, 2017 . . . Cooper . . . flooded his cell 14 Right 15 3 C/H. Lt. Terry Peede ordered Inmate cooper to stop flooding his cell. Inmate Cooper did not comply. Lt. Peede deployed two short burst of OC spray striking Inmate Cooper in the facial and chest area. Lt. Peede then ordered Inmate Cooper to back of up his cell door to be placed in metal wrist restraints. Inmate Cooper complied. Inmate Cooper was placed on property restriction for his behavior.

He also attaches grievances and responses thereto which predate and are close in time to the incidents that are the basis of this complaint.

As relief, Plaintiff asks for monetary and punitive damages. He also asks that the Court "place these officers somewhere where they cannot retaliate on inmates . . . ."

4

# II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. *Official-capacity claims*

"Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Because the state Defendants are employees or officers of the Commonwealth of Kentucky, the claims brought against them in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will*

*v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, because Plaintiff seeks money damages from state officers or employees in their official capacities, he fails to allege cognizable claims under § 1983.  Additionally, the Eleventh Amendment acts as a bar to claims for monetary damages against Defendants in their official capacities.  *Kentucky v. Graham*, 473 U.S. at 169.  Therefore, Plaintiff's official-capacity claims against the state Defendants will be dismissed for failure to state a claim upon which relief can be granted and for seeking monetary relief from Defendants who are immune from such relief.

To establish § 1983 liability against a corporation like "CCS," whether public or private, a plaintiff must show that the defendant implemented a policy, custom, or practice that caused a deprivation of the Plaintiff's constitutional rights.  *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001).  Here, Plaintiff has not alleged the existence of a policy, custom, or practice.  Consequently, the official-capacity claims against the "CCS" employees will be dismissed.

## B.  Individual-capacity claims

### Claims against "CCS" employees

Plaintiff alleges that the "CCS" Defendants violated his Fourth Amendment right by violating "H.I.P.P.A." in giving out health information without a court order.

In general, HIPAA governs confidentiality of medical records and regulates how covered entities can use or disclose individually identifiable medical information about an individual.  45 C.F.R. § 164.512.  An individual, however, cannot maintain a private suit in his own name for a violation of HIPAA.  *See Holland v. Aegon U.S. Corp.*, No. 3:07CV-298-S, 2008 WL 2742768, at *3 (W.D. Ky. July 11, 2008) (citing *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006)).

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Plaintiff offers no explanation of how his Fourth Amendment rights were violated by CCS employees giving out his health information without a court order.

Therefore, Plaintiff fails to state a claim for the alleged infringements of his HIPAA privacy rights or under the Fourth Amendment, and the "CCS" Defendants will be dismissed from this suit.

*Claim against Commissioner Ballard*

The complaint describes no actions taken personally by Defendant Ballard. To the extent Plaintiff seeks to hold Defendant Ballard liable based on his supervisory position of KDOC Commissioner, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Plaintiff's complaint does not do so with regard to Defendant Ballard, and Plaintiff therefore fails to state a claim against him.

*Retaliation claims*

Plaintiff alleges that Defendant Beeler retaliated against him by putting him in a restricted cell for saying that Defendant Beeler cannot read and for filing grievances; that Defendant Peede retaliated against him by placing him in a restricted cell because Plaintiff filed grievances against staff; that Defendant Belt retaliated against him for filing grievances; that Defendant Pillion retaliated against him by throwing away his grievance forms; and that Defendant Gardner retaliated against him by throwing away "valuable" items.

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Plaintiff has the burden of proof on all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

The Court will allow Plaintiff's retaliation claims to go forward, except for Plaintiff's allegation that Defendant Beeler retaliated against him for saying Defendant Beeler could not read. Such a comment cannot be considered protected conduct under the *Thaddeus-X* analysis. *See Torres v. Clark*, 522 F. App'x 103, 105-06 (3d Cir. 2013) (an inmate-plaintiff who made statements about a corrections officer which constituted, *inter alia*, "inappropriate language" did not engage in constitutionally protected conduct); *Brown v. Hannah*, 850 F. Supp. 2d 471, 479 (M.D. Pa. 2012) ("[Plaintiff's] retaliation claim fails the first prong . . . because he does not establish any basis to show that he had a constitutionally protected right, in the prison setting, to use inappropriate, disrespectful and derogatory language to [the prison official]."); *Thomas v.*

*MCSO*, No. CV 09-0708-PHX-DGC (JRI), 2009 WL 1311992, at *3 (D. Ariz. May 12, 2009) (calling an officer a derogatory name is not protected conduct).

*Fourth Amendment claim*

Plaintiff cannot assert that the search of his cell and confiscation of his property constitute a violation of the Fourth Amendment. In *Hudson v. Palmer*, 468 U.S. 517 (1984), an inmate brought an action under § 1983 claiming, in part, that the destruction of his personal property during a search of his cell violated his Fourth Amendment right to be free from unreasonable searches and seizures. In rejecting the inmate's claim, the Supreme Court stated that a prisoner does not possess "any subjective expectation of privacy . . . in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches and seizures does not apply within the confines of the prison cell." *Hudson*, 468 U.S. at 526. The same rationale applies to a prisoner's argument that the loss of his property constituted an unreasonable seizure in violation of the Fourth Amendment. *Id*. at 528 n.8. Thus, here, Plaintiff has failed to allege a cognizable Fourth Amendment claim regarding having his property thrown away.

*Fifth Amendment claim*

Plaintiff alleges that Defendant Beeler violated the Fifth Amendment by stealing his pictures, books, and magazines.

A federal court cannot entertain a claim under the Takings Clause of the Fifth Amendment to the U.S. Constitution under § 1983 unless or until the complaining property owner has been denied an adequate post-deprivation remedy. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 721 (1999). As explained by Justice O'Connor in her concurrence in *Hudson v. Palmer*:

> [A] mere allegation of property deprivation does not by itself state a constitutional claim under either [the Due Process or Takings] Clause. The Constitution requires the Government, if it deprives people of their property, to provide due process of law and to make just compensation for any takings. The due process requirement means that Government must provide to the inmate the remedies it promised would be available. Concomitantly, the just compensation requirement means that the remedies made available must adequately compensate for any takings that have occurred. Thus, in challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate. When adequate remedies are provided and followed, no uncompensated taking or deprivation of property without due process can result.

*Hudson v. Palmer*, 468 U.S. at 539 (citations omitted). Plaintiff has failed to demonstrate an inadequacy of state remedies in the case at bar. In fact, Kentucky has adequate post-deprivation remedies for the confiscation or destruction of property, such as a tort action for conversion against individual defendants. *See Wagner v. Higgins*, 754 F.2d 186, 192 (6th Cir. 1985). This claim will be dismissed.

*Sixth Amendment claim*

Plaintiff alleges that Defendant Gardner violated the Sixth Amendment by taking his property and then throwing away valuable items.

The Sixth Amendment to the United States Constitution states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. Plaintiff has made no showing whatsoever as to how Defendant Gardner's actions violated his Sixth Amendment rights. Accordingly, this claim will be dismissed.

*Racism*

Plaintiff alleges that the Defendant correctional officers had expressed "how much they do not like people of color." In his complaint, Plaintiff describes himself as a black man.

The Sixth Circuit has held that harassing or degrading language, including race-based language, by a prison official, although unprofessional and despicable, does not amount to a constitutional tort. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (per curiam); *see also Searcy v. Gardner*, Civil No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). This claim will be dismissed for failure to state a claim.

*Conditions-of-confinement claim*

Plaintiff alleges that he was left naked in a dirty, cold cell without access to a shower or a working toilet for a period of several days. Plaintiff states that he was denied a mattress, toilet paper, running water, and soap. He also alleges that during that time he had "mace in [his] eyes and all over [his] body."

"[E]xtreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d at 955. An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[P]rison officials must ensure that inmates receive adequate

11

food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. at 526-27).

Generally, allegations about temporary inconveniences, *e.g.*, being subjected to a flooded cell or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (holding no Eighth Amendment rights violated where inmate had no toilet paper, soap, toothpaste, toothbrush, running water, or the ability to shower for six days while on Behavioral Management).

In addition, courts have rejected Eighth Amendment claims for lack of a significant injury from living conditions far harsher than Plaintiff alleges he suffered during the five or six days he was allegedly placed in a restricted cell. *See, e.g.*, *Beverati v. Smith*, 120 F.3d 500, 505 n.5 (4th Cir. 1997) (noting that inmate's alleged confinement for six months in hot cells, infested with vermin and smeared with urine and feces, with only cold food in smaller portions and infrequent changes of linens did not state Eighth Amendment claim with no showing that the conditions resulted in serious physical or emotional injury); *Harris v. Fleming*, 839 F.2d 1232, 1234-36 (7th Cir. 1988) (holding no violation of Eighth Amendment where inmate not given soap, toothpaste, or toothbrush for 10 days and no toilet paper for five days).

Based on the above, the Court concludes that Plaintiff has not stated an Eighth Amendment conditions-of-confinement claim for being left naked in a dirty, cold cell without access to a shower or a working toilet for a few days. Moreover, Plaintiff's allegations that during that time he had "mace in [his] eyes and all over [his] body," is undercut by the

12

allegations in his complaint that, after he was maced, Defendant Peede "rushed [Plaintiff] to the shower in shakles and handcuffs the nurse told me to sit down and put my head back. She then poured water over my mouth and nose trying to drowned me." Thus, the Court will dismiss Plaintiff's Eighth Amendment claim.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's official-capacity claims against the state Defendants are **DISMISSED** for failure to state a claim and for seeking monetary relief from defendants who are immune from such relief pursuant to 28 U.S.C. § 1915A(b)(1) and (2).

**IT IS FURTHER ORDERED** that the following are **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1): all claims against the "CCS" employees and Commissioner Ballard and Plaintiff's claims under the Fourth, Fifth, Sixth, and Eighth Amendments (conditions of his confinement), as well as his claims related to racism.

The Clerk of Court is **DIRECTED** to terminate the following as Defendants in this action: David Watson, Jorge Dominicis, Gerard Boyle, and Rodney Ballard.

The Court will enter a separate Scheduling Order to govern the development of the remaining claims, *i.e.*, the retaliation claims against Defendants Beeler, Peede, Belt, Pillion, and Gardner in their individual capacities. In allowing these claims to continue, the Court expresses no opinion on the ultimate merit of these claims.

Date: June 7, 2017

**Greg N. Stivers, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
Defendants
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4416.009

13